BRYSON, Circuit Judge,
dissenting.
In order to understand the meaning of the 1999 Consulting Agreement, it is necessary to examine not only that agreement, but the two prior agreements that provide the context and, by incorporation, at least some of the content of the 1999 agreement. The prior agreements between Dr. Lauks and Abbott’s corporate predecessors are an untitled 1984 agreement, which outlined various aspects of Dr. Lauks’s rights and responsibilities as an employee, and a 1992 document entitled “Employment Agreement,” which incorporated the covenants of the 1984 agreement. The 1984 agreement contained an assignment-of-invention clause. The 1999 Consulting Agreement does not contain an explicit assignment-of-invention clause, but it contains a provision that incorporates at least some of the covenants found in the 1992 and 1984 agreements. The question in this case is whether the assignment-of-invention clause from the 1984 and 1992 agreements was incorporated by reference in the 1999 agreement. The majority states that the 1999 Consulting Agreement “does not contain any obligation that Lauks must assign rights in inventions, improvements, or discoveries made or conceived during the consultation period,” and that the 1999 agreement “is unambiguous and does not continue the 1984 Agreement’s Disclosure and Assignment Covenant.” I disagree with that conclusion. I believe that the 1999 Consulting Agreement is at least ambiguous as to whether it incorporated the assignment covenant of the 1984 agreement. I would therefore vacate the judgment of the district court and remand this case for discovery and consideration of extrinsic evidence regarding whether, and to what extent, the 1999 Consulting Agreement incorporated the assignment-of-invention clause that was first found in the 1984 agreement.
Abbott and Epocal agree that by signing the 1984 agreement, Dr. Lauks assumed obligations related to confidentiality, non-competition, non-solicitation, disclosure of inventions, and, most importantly for our purposes, assignment of inventions. Abbott and Epocal also agree that in the 1992 Employment Agreement Dr. Lauks and i-STAT referenced the entirety of the 1984 agreement in two ways. First, they assigned a shorthand title to the untitled 1984 document: the “Confidentiality and Non-Competition Agreement.” That shorthand title did not, of course, include specific reference to all of the covenants of the 1984 agreement, but it was clearly intended to refer to the entire 1984 agreement with all of its covenants, including the assignment-of-invention clause. Second, Dr. Lauks and i-STAT identified the 1984 agreement by describing some, but not all, of the subject matter of that agreement. They did so by referring to the 1984 agreement as the “certain letter agreement ... concerning employee confidentiality and non-competition.” Even *1305 though the 1992 Employment Agreement does not use the word “assignment,” Epocal acknowledges that Dr. Lauks’s assignment obligations from the 1984 agreement carried over into the 1992 agreement because the 1992 agreement incorporated all of the obligations imposed on Dr. Lauks by the 1984 agreement.
In the 1999 Agreement, Dr. Lauks and i-STAT continued their practice of referring to the untitled 1984 agreement with a shorthand title; in 1999 they referred to it as the “Existing Confidentiality Agreement.” Moreover, as in the 1992 agreement, the 1999 agreement made reference to the 1984 document without listing each of the covenants found in that agreement. The 1999 agreement described the 1984 agreement as “the existing agreement ... regarding confidentiality, non-solicitation, and non-competition.”
Epocal’s position is that the 1999 agreement, unlike the 1992 agreement, carried forward only the three listed covenants (confidentiality, non-solicitation, and non-competition) and not the rest of the covenants from the 1984 agreement. The problem with that position is that, if the assignment obligation found in the 1984 agreement was incorporated into the 1992 agreement (and Epocal agrees that it was), there is no reason to interpret the similar terms of the 1999 agreement to exclude the assignment obligation.
The differences between the 1992 and 1999 agreements with respect to the manner in which they refer to the 1984 agreement are minor. First, the 1992 and 1999 agreements use slightly different language to refer to the 1984 agreement (“Confidentiality and Non-Competition Agreement” in 1992, and “Existing Confidentiality Agreement” in 1999), but it is clear that both are simply shorthand references to the 1984 agreement. Second, the 1992 agreement refers to the 1984 agreement as the agreement “concerning employee confidentiality and noncompetition,” while the 1999 agreement refers to the 1984 agreement as the agreement “regarding confidentiality, non-solicitation and non-competition.” Again, it is quite plain that both references are to the 1984 agreement. Accordingly, if the quoted language in the 1992 agreement refers to the 1984 agreement as a whole — as Epocal concedes — the similar quoted language from the 1999 agreement would appear to have the same meaning.
In arguing to the contrary, Epocal places great weight on the fact that the 1992 agreement permitted Dr. Lauks to be terminated for breach of “any of the covenants” in the 1992 Employment Agreement or in the 1984 agreement. The 1999 agreement, however, has substantially similar language, stating that Dr. Lauks could be terminated for breach “of any material covenant in the Consulting Agreement (including the Existing Confidentiality Agreement ...).” Moreover, in light of the parties’ practice of referring to the 1984 agreement by reference to fewer than all of its covenants, the fact that the section of the 1999 agreement defining “Existing Confidentiality Agreement” is titled “Continuation of Employee Confidentiality, Non-Solicitation and Non-Competition Covenants” is not sufficient to establish that the 1999 agreement was intended to exclude any form of the assignment covenant found in the prior agreements.
It is true that the 1992 agreement was an employment agreement whereas the 1999 agreement was a consultancy agreement. However, the change in the nature of Dr. Lauks’s relationship with i-STAT does not suggest that the parties intended to deviate from their established practice of identifying the entirety of the 1984 agreement with a shorthand name consisting of a reference to some, but not all, of *1306 the covenants contained in that 1984 document. Because I disagree with the majority’s conclusion that the 1999 Consulting Agreement unambiguously excludes any version of the assignment obligation initially contained in the 1984 agreement, I would reverse the district court’s dismissal order. I would direct the district court on remand to permit discovery and to consider extrinsic evidence bearing on whether the parties contemplated that Dr. Lauks would continue to have an assignment obligation with respect to inventions made in the course of his work for i-STAT and, if so, whether either of the inventions at issue in this case fall within the scope of that assignment obligation.